UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ORIG-

Peter James Atherton
3414 Newark St. NW
D.C. 20016
(Pager 202-424-2000) Plaintiff

V.

Case: 1:14-cv-02160
Assigned To : Cooper, Christopher R.
Assign. Date : 12/22/2014
Description: Pro Se Gen. Civil

UNITED STATES
OF AMERICA

1. Secretary, Dept. of Interior
   Sally Jewell
   1849 C St. NW
   D.C. 20240                    (individually & in official
                                  capacity)

2. United States Park Police
   - Robert Maclen
     Acting Police Chief
                &
   - Sgt. Veranelli (spelling?)
                &
   - Other unamed, unknown
     helicopter personnel aboard
     the "Eagle" helicopter & management.
     1100 Ohio Drive SW
     DC 20024              (individually & in
                            their official capacity)

3. Secretary of Defense
   1000 Defense Pentagon    (individually &
   D.C. 20301                in official capacity)

                  defendants

            page 1 of 8

4. Donald Verrilli, Jr.
Office of the Solicitor General
Department of Justice
950 Pa. Ave. NW
D.C. 20530                    (For Service of Process)
                                              only

## COMPLAINT

Plaintiff, Peter James Atherton, is filing this complaint pro se. He also is seeking in forma pauperis status and because of the complexity of this matter to Atherton, he also seeks the appointment of legal counsel. He is a DC resident.

## Jurisdiction

Federal Tort Claims Act, 28 USC § 1346, 28 USC § 2471 et seq. To the extent applicable, 28 USC § 2401 (b) & any other unknown jurisdictional statute + U.S. Const Amdmt 1, 5, 14.

## Statutory Notification Requirements

1) Atherton filed an administrative claim within two years after an incident involving a park police helicopter hovering at a very low level above the residence where Atherton was sleeping. The incident occurred November 15, 2011. The claim was filed November 14, 2013.

page 2 of 8

See exhibit 1. Atherton also filed
a reconsideration request, exhibit 2, June 2, 2014,
per defendant Interior Dept.'s
invitation in their denial of Atherton's
claim by letter dated December 3, 2013, exhibit
2.) Atherton has not received a response
to date from Interior Dept to his
6/2/2014 reconsideration request. Atherton
files this complaint within six
months of the filing of his reconsi-
deration request.

3.) Atherton incorporates by reference
exhibits 1, 2, and 3 into this complaint.
The Helicopter Hovering Incident.

4.) Damages - Per exhibit 1, Atherton
claims damages to his heart, possibly
other body organs, emotional trauma,
pain & suffering, as a direct result
of this incident. It should be
noted that in 2008, Atherton was
diagnosed with a cardiac infarction,
among other injuries, as a result

page 3 of 8

of an automobile accident. The additional stress caused by the hovering helicopter aggravated the injury. Because Atherton does not have health insurance, he was very reluctant to seek hospitalization. Atherton instead decided to rest, treat perceived trauma himself and not conduct in-person census interviews until he felt healthier. Atherton did, however, locate the federal agency, the U.S. Park Police, who admitted that they had a helicopter in the vicinity of the residence at the time & date in question. Atherton has not yet determined why the helicopter was hovering over the house. Atherton also claims lost wages, to be determined.

5) <u>Witnesses</u> — Atherton plans to provide witness verification — to be determined.

6) It should be noted that Atherton rents a room in the house at the attic level. Only a wood & shingle roof

separates Atherton from the outside.
The dwelling is a four story house.

Negligence

7.) Atherton alleges that defendants, flight personnel, had exclusive control and management of the aircraft (Eagle), which hovered over the residence.

8.) The events resulting in Atherton's personal injuries were such that in the ordinary course of things would not have occurred had defendants flight personnel and management exercised proper care.

9.) Both before and after the November 15, 2011 incident, defendants Interior and Park Police had sole and exclusive information (or should have) of the safety issues related to hovering at low levels.

10.) Defendants have alleged that the Eagle was assisting officers at Pierce Mill, which is approximately one mile (line of sight) from 3414 Newark St NW. There is no explanation of why the Eagle was hovering over the 3414

page 5 of 8

Newark St NW residence, nor is there any claim that the source of gunshots occurred at the residence. After Atherton was rudely awakened at 0230, he remained awake until Nov. 16, 2011. He noted no police officers were visible at ground level at the residence during this time, assisting the helicopter's ground search. Atherton alleges that the helicopter personnel acted outside of any ground level search.

11.) For information purposes, Atherton has never been aboard and never flown in a helicopter.

12.) Atherton respectfully requests that if necessary the doctrine of res ipsa loquitur be allowed since the details of information concerning this flight lies with defendants.

13.) Atherton respectfully requests that each paragraph in this complaint be taken together with all others to either specify or infer negligence.

14.) Atherton notes at this time that prior

to his filing his agency reconsideration request in late May, 2014, his file of this case was not in his briefcase, which is where he kept the file. Atherton had performed considerable research on helicopters. Everything was gone. Atherton notified his contacts in Interior and USPP, who agreed to provide Atherton with their copies of his claim. Atherton is thankful for their help and so acknowledges.

## Conclusion

15. Atherton alleges defendants—

a) Breached their duty to exercise due care by hovering over an inhabited dwelling for no obvious reason,

b) By hovering at too low an altitude for safe helicopter operation,

c) By causing injury, pain, suffering, etc. to Atherton's person & damage to trees & property,

d) For which the helicopter hovering itself at low altitude was the proximate cause,

e) and that except for the helicopter's negligent operation, no damage would

have occurred. This actionable negligence is attributed to defendants, individual and jointly.

In sum, but for the fact that the helicopter hovered in a grossly unsafe manner, Atherton would have continued in his sleep and not have had his life threatened.

## Dept. of Defense,

Atherton realizes that the statute of limitations has expired as to this defendant. However the camouflaged camouflaged brown & tan markings are probably attributable to this defendant.

Atherton is not able to ascertain the reason. However, the events per exhibit 1, pages 4-5 identify what is probably military helicopters.

Atherton seeks some kind of equitable remedy directed at defense to cease such unprofessional and careless behavior.

December 2, 2014

Peter James Atherton
Pager 202-424-2000
Home 202-362-0500

page 8 of 8

Atherton
exh 1

~ U.S. Department of Interior ~

~ United States Park Police ~

This document is a claim for monetary compensation resulting from damages / injury caused by a helicopter — Federal Tort Claims Act.

1. Department / Agency — U.S. Department of the Interior, United States Park Police.

2. Claimant — Peter James Atherton
   3414 Newark St. NW
   D.C. 20016

3. Claimant Atherton is a civilian and a U.S. citizen.

4. DOB = January 18, 1946.

5. Marital Status — Not married.

6. The incident occurred at 0230, 2:30 AM, November 15, 2011.

page 1 of 5

## THE INCIDENT;

Claimant Atherton was asleep, reclining face up with his back on the bed at the attic level of the rented room in a single family dwelling. At 0230, 2:30 AM, he was abruptly awakened with his heart and probably other body organs oscillating in his chest. His heart seemed to be throbbing violently in his chest, pounding itself against his ribcage. Atherton abruptly sat up in bed and noticed what appeared to be a pulsating sound overhead. The oscillations of his heart within his chest seemed to Atherton to be in tune with the pulsating sound overhead. However, the violence of the heart throbbing seemed to gradually decrease with Atherton in the sitting position, his chest being perpendicular to the ceiling. Atherton then noticed a loud rustling sound of the trees outside his window shaking somewhat violently.

The pulsating sound overhead then seemed to begin to decrease in intensity.

page 2 of 5

...then recognized what appeared to him to be the noise of a helicopter outside his window. The sound of the helicopter gradually dissipated as it seemed to leave the area.

Atherton remained seated not knowing exactly what next to do. With every heartbeat, there was intense to dull pain. Using his flashlight, he noticed the time was 0235. Atherton reclined in bed for the next hour or so. However, because of the pain, he did not sleep.

Because Atherton was alive despite the pain, he concluded that there was no catastrophic damage to his body. Atherton had no health insurance and was very reluctant to seek medical help at the time.

Atherton did, however, want to know what had happened. Atherton proceeded to phone the various police forces in the area to determine if they knew of helicopter flights in what should be a "no fly zone" because of the U.S. Vice President's home's proximity to Newark St NW.

When Atherton contacted the U.S.

page 3 of 5

Park Police, a Sgt Varanelli (spell?) spoke to Atherton and verified that he was on duty inside a helicopter which was flying in the area at the time in question. When Atherton explained what happened, the Sgt. said he was in a Bell helicopter and implied that there might be problems with these older helicopters. The Sgt also provided some specifications for the helicopter.

8. Personal Injury.

History — Atherton first felt an unexplained rapid heartrate in 2005. In 2008, he was diagnosed with a cardiac infarction. In 2009 while in Atlanta, Ga. at a residential dwelling and while asleep, Atherton was awakened with a rapid heartbeat. He heard a noise outside the dwelling. Upon investigating he noticed a camouflaged helicopter (brown, tan, etc) flying just above the treeline over the residential neighborhood. In 2010, a similar incident occurred in Springfield, Va. at a different residential dwelling. In

page 4 of 5

2011, the same type of incident occurred twice in DC at the Newark 50 NW dwelling. The only firm identification that Atherton has been able to make of this continuing occurrence is the Nov. 15, 2011 incident, which is the subject of this claim.

Atherton claims trauma to his heart & possible other body organs, emotional trauma, pain, suffering and the continuing worry of whether a helicopter overflight while he is sleeping could result in a fatality.

9. <u>The Claim.</u>

Atherton claims a total of $850,000. Atherton seeks a cease and desist order prohibiting low level helicopter flights over Atherton's dwelling places. He also seeks whatever other relief may be available to him.

Nov. 14, 2013

Peter James Atherton

Pager - 202-424-2000

page 5 of 5

Addendum "A"

- U.S. Dept. of Interior
- United States Park Police

Rec. for Jim Weine
Gurri H
6-21-
Hamilton
6/3/
Rec. for
Pete Gentik
Ernest Hen

## Request for Reconsideration

Claimant — Peter James Atherton

By letter dated Dec. 3, 2013, Asst. Solicitor I. L. Weiner denied my federal tort claim of Nov. 14, 2013.

The same letter suggested reconsideration based upon new evidence.

### THE INCIDENT.

Atherton essentially complained tortiously to this agency that a helicopter from the U.S. Park Police hovered directly over his dwelling at 0230, 2:30 PM, November 15, 2011, at low altitude causing heart and possibly other internal organ injuries from what appeared to Atherton to be the rotation of the helicopter's rotors. Atherton estimated that the hovering occurred continuously for a minimum of 15 to 20 seconds. The hovering caused Atherton's heart & possibly other internal body organs to oscillate

page 1 of 4

violently within his chest.*

The U.S. Dept. of Interior Response of 12/3/2013.

The response verified that a U.S Park Police helicopter was in the area assisting other officers and that its flight path "may have been near your home." The response then denied recovery because the helicopter's activities "represent clearly legitimate law enforcement activities."

The Issue of "New Evidence."

Atherton is required to produce "new" evidence when most of the potentially culpable evidence exists with the government. The seven sentence explanation within the 12/3/2013 Interior Department response lacks significant detail.

However, Atherton's informal inquiries to the Park Police reveal the Sgt Veranelli (SP) commanded the helicopter and that he has been "grounded." Again, however, Atherton has no confirmation of this. The Sgt has

* Atherton's FTCA complaint to the Interior Dept. of 11/14/2014 did not use the word "hover" to describe the helicopter's position. It is estimated ~~between~~ the time Atherton was awakened until the helicopter departed. The incident

page 2 of 4

not returned Atherton's phone calls. So
Atherton does not know why the Sgt.
was "grounded," if indeed that is the case.

<u>Discovery.</u>

Atherton respectfully requests that he
be permitted access to the 12/3/13 letter's
"investigation." He also respectfully requests,

- Names & contact info for crew,
- Design info for helo.
- Safety info for helo, particularly the rotor vortex.
- Safety requirements for hovering.
- Electrical/electronic equipment in helo 11/15/2013.
- Flight regs for helos in DC.
- Flight path & altitude info for helo 11/15/2013,
etc. &

Other possible discovery items, such as the outcome
of the Pierce Mill's incident.

Atherton respectfully requests that these
items be addressed during the next 6 months,
when Atherton plans to seek a more formal
request. Any new/unaddressed evidence could
then be ~~tested~~ presented for proper reconsi-
deration, after discovery.

_____

* definitely was not a non-stop "Flyover"
event. Atherton does not know why the
helicopter hovered over the residence.*

page 3 of 4

<u>The Injuries</u>

Atherton has documented in his 11/14/2013 claim that he was diagnosed in 2008 to have had a cardiac infarction. He has also documented his adverse reaction healthwise to the vortex of the helicopter rotor at different times over the last few years. Atherton values his life and does not wish to have his life continually threatened by "clearly legitimate law enforcement activities." He, therefore, defers addressing his injuries at this time while he works to prove negligence to the Department's satisfaction.

<u>Conclusion</u>

Atherton respectfully requests that this reconsideration request be continued during the next six months to permit Atherton the opportunity to discover and provide new evidence for negligence in an attempt to resolve the negligence issue properly.

June 2, 2014

Peter James Atherton
3414 Newark St NW
D.C. 20016
Fax: 202-424-2000.

page 4 of 4

*atherton exhibit*
*3*



# United States Department of the Interior

OFFICE OF THE SOLICITOR
Washington, D.C   20240

IN REPLY REFER TO

December 3, 2013

**CERTIFIED MAIL- RETURN RECEIPT REQUESTED**

Peter James Atherton
3414 Newark Street N.W.
Washington, D.C.  20016

> Re:    FTCA Claim
>          Date of incident:  November 15, 2011

Dear Mr. Atherton:

We have considered, under the Federal Tort Claims Act ("FTCA"), your claim for personal injuries and other damages allegedly sustained when a United States Park Police ("USPP") helicopter allegedly flew in the vicinity of your home in the early morning hours of November 15, 2011.

The FTCA provides that a claimant may file an administrative claim for money damages against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment.  See 28 U.S.C. § 2672.

You claim that you sustained injuries and trauma as the result of an allegedly low helicopter flight near your home at Newark Street in Northwest Washington, D.C.  You allege to have experienced at least three other helicopter-related incidents in different locales in the last four years.

Our investigation determined that the USPP helicopter ("Eagle") was assisting officers who were searching for the source of gunshots first observed at approximately 1:40 a.m. in the vicinity of the Pierce Mill area in Rock Creek National Park.  This location is not far from your home and it is well within reason that the Eagle's flightpath may have been near your home.  These activities, however, represent clearly legitimate law enforcement activities.  As a result, we find no basis to award damages based on actionable negligence under the FTCA.

FTCA Claim Correspondence re: Peter J. Atherton
December 3, 2013
Page 2 of 2

For these reasons, your claim is denied.

If you are dissatisfied with this determination, you may submit a written request for reconsideration based on *new* evidence, or you may file suit in an appropriate United States District Court not later than six months after the date of the mailing of this notification.

Sincerely yours,

James L. Weiner
Assistant Solicitor
Branch of Acquisitions
     and Intellectual Property
Division of General Law

cc: Pete Gentile, NPS Claims Specialist, National Capital Region