UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PETER JAMES ATHERTON**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br> Defendant. | Case No. 14-cv-02160 (CRC) |

## MEMORANDUM OPINION

Plaintiff Peter James Atherton awoke early one morning to the sound of a U.S. Park Police helicopter flying overhead in the course of investigating a report of gunshots fired in the area. Greatly distressed by the incident, Atherton claims to have suffered severe emotional trauma and harm to his internal organs. The government has moved to dismiss his ensuing *pro se* Complaint, one brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. Finding that the helicopter pilot's chosen method of flight was grounded in the Park Police's policy of assisting local law-enforcement operations, and that it therefore satisfies the FTCA's "discretionary function" exception to the United States' waiver of sovereign immunity, the Court will grant the government's motion.

### I.     Background

Peter Atherton "rents a room in [a four-story] house at the attic level," with "[o]nly a wood [and] shingle roof separat[ing] [him] from the outside." Compl. ¶ 6. He alleges that, on November 15, 2011, "a park police helicopter [was] hovering at a very low level above [his] residence," id. ¶ 1, which "awakened [him]" at 2:30 AM, id. ¶ 10. According to Atherton, the helicopter's hovering interrupted his sleep, id. ¶ 15, and caused "damage[] to his heart [and] possibly other body organs, emotional trauma, pain [and] suffering," id. ¶ 4. Atherton also

claims that the helicopter's presence aggravated other injuries he had sustained in a 2008 automobile accident. Id.

In November 2013, Atherton submitted an administrative tort claim to the National Park Service's U.S. Park Police, id. ¶ 1, in which he recounted his experience more vividly:

> Claimant Atherton was asleep, reclining face up with his back on the bed at the attic level of the rented room in a single family dwelling. At . . . 2:30 AM, he was abruptly awakened with his heart and probably other body organs oscillating in his chest. His heart seemed to be throbbing violently in his chest, pounding itself against his ribcage. Atherton abruptly sat up in bed and noticed what appeared to be a pulsating sound overhead. The oscillations of his heart within his chest seemed . . . to be in tune with the pulsating sound overhead. . . . Atherton then noticed a loud rustling sound of the trees outside his window shaking somewhat violently.
> . . . Atherton then recognized what appeared to him to be the noise of a helicopter outside his window. The sound of the helicopter gradually dissipated as it seemed to leave the area.
> Atherton remained seated not knowing exactly what next to do. With every heartbeat, there was intense to dull pain. . . . [B]ecause of the pain, he did not sleep.

Id. Ex. 1, at 2–3. Because Atherton purportedly "d[id] not have health insurance, he was very reluctant to seek hospitalization," deciding instead "to rest" and treat his "perceived trauma himself[.]" Compl. ¶ 4. The agency denied his claim for $850,000 in damages. Id. ¶ 1; see generally id. Ex. 3.

In a declaration filed with the Court, Sergeant Keith Bohn, a helicopter pilot with the U.S. Park Police since 1994, described that evening's dispatch of the Park Police helicopter as follows:

> On November 15, 2011, during the events at issue in this case, I was on duty with the Aviation Unit in the District of Columbia. I was responsible for piloting the [Park Police] helicopter, "EAGLE 2[,]" should aviation support [have] be[en] warranted during my shift.
> At approximately 0140 hours, [Park Police] units from . . . District 3 responded to a report of "shots fired" within the vicinity of the Pierce Mill area of Rock Creek Park . . . .

2

> [Park Police] units on the ground . . . requested dispatch of EAGLE 2 to provide aerial surveillance of the area to determine whether any suspects or shot victims could be located.
>
> At approximately 0200 hours, I piloted the EAGLE 2 helicopter from its landing zone . . . in Anacostia Park, Southeast Washington, D.C. to the Pierce Mill area, and conducted a broad search of the general area using the helicopter's search lights and equipment. . . .
>
> After searching the area for approximately one-half hour with negative results, [Park Police] units on the ground cleared EAGLE 2 and the mission was terminated.

Govt.'s Mot. Dismiss or, in the Alternative, for Summ. J. ("Govt.'s Mot. Dismiss") Ex. A ("Bohn Decl."), ¶¶ 2–6.  Sergeant Bohn denied having operated EAGLE 2 "at [a] low altitude over [Atherton's] residence," id. ¶ 8, or "at an altitude or manner inconsistent with appropriate and legal operation of police helicopters in the District of Columbia," id. ¶ 9.  Rather, he averred, "[a]t all times during the search mission of November 15, 2011, I operated EAGLE 2 at a safe altitude above occupied space."  Id. ¶ 10.

Atherton has sued Sally Jewell, Secretary of the Interior;[1] Robert MacLean, Acting Chief of the U.S. Park Police; Sergeant Bohn; and Sergeant Mark Varanelli, whom he alleges to have been aboard EAGLE 2 on November 15.[2]  Atherton brings this action under the FTCA, demanding compensation for lost wages, see Compl. ¶ 4, and for "injury, pain [and] suffering . . . to [his] person [and] damage to trees [and] property," id. ¶ 15.c.  His Complaint is premised on the allegation that a U.S. Park Police employee negligently operated a helicopter in the vicinity

---

[1] The U.S. Park Police is a subdivision of the National Park Service, which is a bureau of the U.S. Department of the Interior.

[2] Atherton's Complaint also names as defendants the Secretary of Defense and the Solicitor General of the United States.  He requests "some kind of equitable remedy directed at [D]efense to cease such unprofessional and careless behavior," Compl. ¶ 19; he appears to sue the Solicitor General under the FTCA.  But because Atherton has pled no facts suggesting any likelihood of future harm attributable to the Department of Defense from the Park Police's use of helicopters, or any connection at all between the Solicitor General's office and the November 15, 2011 incident, the Court will grant the government's motion to dismiss as to these defendants.

of his dwelling. Because Atherton has not contested the government's representation that Sergeant Bohn was acting within the scope of his employment—see Compl. Ex. 1, at 4 (alleging that a Park Police employee "was on duty inside a helicopter . . . flying in the area at the time in question"); Govt.'s Mot. Dismiss 5; Bohn Decl. ¶¶ 1, 5—the Court construes Atherton's nedgligence claim as one against the United States alone. See 28 U.S.C. § 2679(b)(1) (providing that when a federal employee "acting within the scope of his office or employment" is alleged to have negligently harmed persons or property, "[t]he remedy against the United States provided by [the FTCA] . . . is exclusive"). Thus, the Court proceeds with "the Government [as] the sole party defendant; and the FTCA's requirements, exceptions, and defenses apply to the suit." Harbury, 522 F.3d at 416.[3]

The government moves to dismiss Atherton's Complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that the FTCA's waiver of sovereign immunity does not apply on these facts. In the event that the Court finds jurisdiction to be proper, the government moves, in the alternative, for summary judgment on the ground that Atherton has demonstrated no compensable injury.

**II.   Legal Standards**

Because "[f]ederal courts are courts of limited jurisdiction, . . . [i]t is . . . presumed that a cause lies outside this limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511

---

[3] The Court notes that neither the Attorney General nor her designee has formally certified that Sergeant Bohn was acting within the scope of his employment, which the so-called Westfall Act contemplates for situations like this—and which the Court understands to be a common practice. See 28 U.S.C. § 2679(d)(1) (providing that upon such a certification, the plaintiff's claim "shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant"). Nevertheless, because the statutory touchstone is whether a governmental defendant was "acting within the scope of his office or employment," id. § 2679(b)(1)—which Atherton does not dispute—and not whether the government has formally filed an "official capacity" certification, the Court construes Atherton's Complaint as one against the United States under the FTCA.

U.S. 375, 377 (1994). When the Court's subject-matter jurisdiction is challenged, "the plaintiff bear[s] the burden of proving by a preponderance of the evidence" that the Court has jurisdiction. Biton v. Palestinian Interim Self-Gov't Auth., 310 F. Supp. 2d 172, 176 (D.D.C. 2004). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). When assessing the existence of subject-matter jurisdiction, unlike whether a plaintiff has stated a claim, a court may consider material outside of the complaint, Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992), but factual discrepancies are to be resolved in favor of the plaintiff, Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990).

Under well-established principles of sovereign immunity, "the United States may not be sued without its consent." FDIC v. Meyer, 510 U.S. 471, 475 (1994) (quoting United States v. Mitchell, 463 U.S. 206, 212 (1983)). "[T]he terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." Hercules, Inc. v. United States, 516 U.S. 417, 423 (1996) (quoting United States v. Testan, 424 U.S. 392, 399 (1976)). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." Meyer, 510 U.S. at 475.

The FTCA waives the federal government's sovereign immunity "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). It "does not create a cause of action against the United States," Hornbeck Offshore Transp., LLC v. United States, 569 F.3d 506, 508 (D.C. Cir. 2009), but instead "makes the United States liable in accordance with applicable local tort law," Art Metal–U.S.A., Inc. v. United States, 753 F.2d 1151, 1157 (D.C. Cir. 1985). Under the FTCA, a plaintiff "may sue the United States in federal court for state-law torts committed by government employees within the scope of their

5

employment." Harbury v. Hayden, 522 F.3d 413, 416 (D.C. Cir. 2008) (citing 28 U.S.C. §§ 1346(b), 2671–80). Thus, the FTCA renders the United States subject to suit for certain—but not all—tort claims.

### III. Analysis

The government contends that it has not waived its sovereign immunity on these facts because the FTCA's "discretionary function" exception is satisfied. This exception provides that the United States is not liable for

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

To determine whether the discretionary-function exception bars a negligence claim against the United States, courts engage in a two-step inquiry. The first question is whether a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Berkovitz v. United States, 486 U.S. 531, 536 (1988). If so, "the employee has no rightful option but to adhere to the directive," id., and "[f]ailure to abide by such [a] directive[] opens the United States to suit under the FTCA." Shuler v. United States, 531 F.3d 930, 933 (D.C. Cir. 2008) (quoting Loughlin v. United States, 393 F.3d 155, 163 (D.C. Cir. 2004)). The second issue is "whether 'the action challenged in the case involves the permissible exercise of policy judgment.'" Id. (quoting Berkovitz, 486 U.S. at 537). Because the exception's purpose is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort," Merry v. Nat'l

Park Serv., 985 F. Supp. 3d 90, 94 (D.D.C. 2013) (quoting United States v. Gaubert, 499 U.S. 315, 323 (1991)), the exception "protects only governmental actions and decisions based on considerations of public policy," Gaubert, 499 U.S. at 323.  "Actions taken in furtherance" of policy or regulatory considerations are thus "protected, even if those particular actions were negligent."  Id.

To survive a motion to dismiss on the basis of the FTCA's discretionary-function exception, a plaintiff "must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime."  Id. at 324–25.  If the FTCA's discretionary-function exemption is satisfied, "the United States is immune from suit and the Court lacks subject matter jurisdiction over the claim."  Olaniyi v. Dist. of Columbia, 763 F. Supp. 2d 70, 89 (D.D.C. 2011).

The government maintains that the manner in which the police investigate criminal activity or patrol areas within their jurisdiction falls squarely within the discretionary-function exception.  Sergeant Bohn's declaration states that Park Police helicopter pilots are "trained in safe, legal, and appropriate operation of [agency] helicopters over the District of Columbia" in order to fulfill the critical governmental function of "conducting law-enforcement operations such as the mission on November 15, 2011."  Bohn Decl. ¶¶ 7, 11.  He further avers that EAGLE 2 "has no legally prescribed minimum altitude or floor above occupied space" when enlisted to investigate reports of crime in the District.  Id. ¶ 11.

In response, Atherton does not contest the existence of a Park Police policy permitting the use of helicopters as adjuncts to traditional ground-based policing.  Rather, from the rough timeline he has stitched together from both parties' pleadings, Atherton finds it "most probable that Bohn was returning to his base"—in other words, "not conducting law enforcement

activities"—when his helicopter passed over Atherton's dwelling. Pl.'s Opp'n 9.[4] According to Atherton, this means that Sergeant Bohn's "low flying negligent interaction with [him] was . . . not grounded in discretionary decisions associated with his job." Pl.'s Opp'n 10. It was instead comparable to a government agent's use of an automobile in connection with his official duties, see Pl.'s Opp'n 9, for which "the exception would not apply" in the ordinary course, because discretionary decisions associated with most government employees' driving "can hardly be said to be grounded in [the] regulatory policy" that they were hired to serve. Gaubert, 499 U.S. at 325 n.7.

      For present purposes, the Court assumes the truth of Atherton's version of events—that Sergeant Bohn was "homeward bound" at 2:30 AM, when EAGLE 2 passed over Atherton's residence, Pl.'s Opp'n 9, which was in close proximity to the reported shooting area. Even so, the Court finds that Sergeant Bohn was engaged in the "exercise of policy judgment" when he piloted the helicopter over residential areas in the course of returning to its landing zone. Shuler, 531 F.3d at 933 (quoting Berkovitz, 486 U.S. at 537). The U.S. Park Police's decision to deploy such strident machinery represents a careful weighing of the costs of near-certain disruption and the advantages of exploiting uninhibited aerial perspectives. The precise routes chosen by Park Police helicopter pilots on their return journeys are part and parcel of the broader regulatory choice to authorize the use of helicopters as a crime-fighting tool with a minimal amount of intrusion. Pilots in the District must balance a number of competing imperatives in fulfilling that mission, including which neighborhoods to rattle, which sensitive structures ought to be avoided at some cost to navigational efficiency, and whether to pause momentarily to regain one's bearings. Because Sergeant Bohn's chosen method of flight was "grounded in the policy of [a]

---

[4] The Court construes Atherton's Response: Statement of Material Facts for Which There Is No Genuine Issue, ECF No. 11, as his opposition to the government's dispositive motion.

regulatory regime," Gaubert, 499 U.S. at 325, it satisfies the FTCA's discretionary-function exception. Even if Bohn hovered briefly over Atherton's nearby residence, therefore, Atherton has failed to show that the United States' statutory waiver of sovereign immunity extends to the allegations in his Complaint.[5]

## IV. Conclusion

For the foregoing reasons, the Court will grant the government's motion to dismiss. A separate Order accompanies this Memorandum Opinion.

                              CHRISTOPHER R. COOPER
                              United States District Judge

Date:   March 30, 2016

---

[5] The Court therefore need not address the Government's alternative motion for summary judgment, one grounded in the contention that Atherton sustained no compensable injury from the helicopter flight.